Good afternoon. Again, we'll ask that the lawyers who are going to represent actually to argue to step up and introduce themselves briefly. Good afternoon, your honors. Kevin Ford. I will be addressing the argument on behalf of Mr. Barrios and Mr. Norris. My co-counsel is Mr. James Nally, who represents Mr. Norris. But you'll be arguing for both? I will be arguing for both, yes, your honor. Good afternoon, your honors. Paul Castiglione on behalf of the counsel. Thank you, counsel. Again, under Supreme Court rules, each side has 20 minutes for the main argument. The appellant has 10 minutes for rebuttal. We, of course, will be flexible given the number of issues in this case. As you saw with the last case as well, please remember to speak loudly and clearly so that what you say goes on the tape recording. Mr. Castiglione, you may be seated, and Mr. Ford, you may proceed when you're ready. Thank you, your honor. Please, the court, Mr. Castiglione, Mr. Feynman. As I stated, I will present the argument for both Mr. Barrios and Mr. Norris. First of all, I want to thank the court for expediting this case. The court recognizes the importance of the case in terms of election cycles. I want to stress that it's still urgent in the sense that while Mr. Barrios is no longer a candidate, Mr. Norris is still a practicing lawyer who the ethics board thinks is subject to this ordinance. And he and other lawyers, maybe quite a few lawyers, are anxious in the outcome of the case before the end of the election cycle. So it's very helpful that the court has given us this expedited hearing. We have attacked the ordinance with three constitutional arguments. We say it's void for vagueness. We say it unnecessarily restricts free speech in violation of the First Amendment and that the county did not have the home rule power to adapt the ordinance. The standard of review is correctly discussed in our briefs, incorrectly discussed in the brief filed by the ethics board. There's no presumption of validity in this case. On the contrary, the burden is on the ethics board to prove that the – to establish the validity of the ordinance. I want to start with – But, Mr. Ford, that's not a global standard of review because, for instance, your home rule argument, for instance, isn't it presumed that the ordinance – No. Free speech is a different standard of amnesty. I ponder that, and I think that it is for this reason that at the heart of the home rule issue, the argument we're making, endows free speech. It's the – whether the state controls campaign contributions, which are an aspect of free speech. But I understand it's a debatable point. Go ahead. The – in our reply brief, we discussed at some length an opinion by Justice Gorsuch, the U.S. Supreme Court in Sessions versus the mail, and I hope you've had a chance to read it. And – It's a dissenting opinion, isn't it? No, it's a concurring opinion. I'll tell you what's so – to me, what's so exciting about the opinion. At the time that we wrote – that I signed off on this brief, a label within – hits my desk and says that Gorsuch, the most recent Trump appointee, rules against the administration on this important immigration case. And so I said, boy, I want to read that. Our brief was filed when I had time. I read it. We cited it as additional authority. And then the state's attorney and I discussed it in our brief. But the reason I say I hope you've read it and I hope that before you put pen to paper, you read it again and again. But the reason that it was so powerful to me is, as the county says, it doesn't state any new law. And it doesn't. The standard for vagueness is probably in 50 cases in Illinois Supreme Court, U.S. Supreme Court. And there's nothing new in the mail. Mr. Ford, let me first ask you if you could move the microphone a little bit more toward the middle. Thank you. On the issue of vagueness, if you do a little digging about the term official action, it's not a term that came out of the sky. It's found in, among other things, federal criminal law. People have gone to federal prison based on the term official action. And while the ethics ordinance certainly doesn't define what it is, don't we have enough of an idea of what it means from reading the ordinance as a whole that it means? Well, I know it snooze many times, but actually the proof of its vagueness is that the county attempted to rely on an affidavit of an administrator to tell us what it means. This is a facial challenge. The big issue here is does it mean ministerial acts or only non-ministerial acts? They say official action means non-ministerial acts. It doesn't say that. There is more. The dictionary they cite, the other statutes that you're talking about, don't make that distinction. They say the distinction is vital. The reason it's vital is because they said, for example, if official action included ministerial acts like issuing marriage licenses, the ordinance would be impossible to resolve. Let's give you that chip on the table, all right? But you just said you're making a facial challenge only. Yes. All right. So the burden is substantial on that, isn't it? Yes. Okay. So you have to show that there's almost no way. No, that's not true. Tell me what's the big issue. You see, when you discuss the standard review, when you have First Amendment issues, it isn't that they only have to supply any explanation. If there are a number of explanations that don't work, then the ordinance is vague. Let me go back. Let me go back to the beginning, if I may, and we'll come to the subject again. The ordinance, the trial court said, and I'll go over the ordinance. The trial court said that to find an ordinance invalid for vagueness, vagueness has to permeate the ordinance. That's not the test when the First Amendment is involved, and we cite Justice Fisis' opinion in the Wilson case for that point. But when you look at this ordinance, every word in this ordinance is vague. The very first, and there's only a few, it's persons seeking official action from the county. And I'm prepared to demonstrate that every word in there is vague, starting with persons. Now persons, if someone files up for a zoning challenge, Smith Company is a person who is seeking official action from the county, a person seeking a tax change. But that doesn't include a lawyer for a person. Any lawyer who has prepared a release, written a contract, knows that lawyers and agents are not covered when you're dealing with the parties. The county here has a definition of persons in the ordinance. That definition of persons does not include lawyers. Are you saying lawyers aren't persons? I'm saying that lawyers aren't persons that are covered by this ordinance. Just think of that simple example. John Jones hires a lawyer to file a tax appeal for him. Who's the person seeking county relief? It's the taxpayer. It isn't the lawyer. And they go on in the definition in the ordinance of lists who are persons. You know, the usual corporations, et cetera, et cetera, legal representatives, which are guardians. It does not say lawyers. Does a legal representative come pretty darn close to a lawyer? No. No, it's not. We've cited a Supreme Court case that says what a legal representative is. It's a guardian. Some people are acting in that capacity. Now, with that term, the ethics board realized that lawyers are not covered by that. So they describe, and we cite in our book library, they cite in their decision finding that these lawyers, 30 lawyers, violated the ordinance. They say they are covered as agents of the taxpayers. They don't say lawyers for the taxpayers. They say they're agents because they realize lawyers aren't covered. And the interesting part about that is lawyers aren't, as a matter of law, agents. But more important, when you go back to the definitions, agents aren't in there either. So this is back to what Justice Gorsuch emphasizes, is that when you have vagueness like this, it's free. The agency, the prosecutors, are free to make it up. And throughout this case, I can demonstrate over and over again, the agency is simply making it up. Under the Ethics Act, they define a prohibited source. And a prohibited source could be any person seeking official action by a state official. That would include the attorney, wouldn't it? No. Why isn't the attorney any person? Because the person they were talking about is the party seeking relief from the county, not the lawyer who is serving as an advocate on behalf of that person. I think that's pretty fundamental. And I think that the fact that the Ethics Board realizes it when they said, we're going to call them agents. And then, of course, as I just said, A, they're not agents. B, agents aren't covered either. Now, on that basis alone, you could A, find this statute vague, the ordinance vague. Or B, you could say, laws aren't covered. And, I mean, that would frankly be taking the easy way out. It would satisfy Mr. Norris's case. It would not completely satisfy ours. And I think that I would urge you not to take the easy way out. I would urge you to go on and to find the whole ordinance vague and not enforceable. And I'll come now to county action. Official action. Official action as it's in the dictionary and stated in that ordinance and in these other statutes is any action. Issuing a marriage license is official action. Giving a picket permit is official action. Homestead exemptions are official action. Probably. And the county says, well, it's official action and it's sometimes ministerial, sometimes non-ministerial. In this ordinance, and the trial judge relied on this, they say that means only non-ministerial actions. Now, non-ministerial actions, that's not what the ordinance says. But the ethics board realizes that if official action means any of the things that I just articulated, the ordinance would be completely unenforceable. It would violate the First Amendment, et cetera, et cetera. So they said we have to put some words in. They're making them up. They inserted into that ordinance that says official action, they inserted the word non-material. But that insertion that you just referred to, as far as our record goes, that's only in the affidavit, right? That's correct. And the judge below, Judge Taylor, did not consider the affidavit at all. Judge Taylor said he did not consider the affidavit at all. This was in response to our motion to strike it. But he did say in his opinion that the way the county interprets the ordinance, it only applies to non-ministerial. So he did read the affidavit, but that's not the point. The affidavit shouldn't be considered. And so to get to my point, that ordinance, as you read it, official challenge, it says official action, and that includes ministerial and non-ministerial, and they are trying to write in non-ministerial. And that's what Gorsuch is talking about, where you can't let the agency decide what they're going to force, what they're going to enforce, how they're going to enforce it, and then tell the court this is what the words mean. The words are what the words are in the statute. And anybody reading that statute would not know what official action meant under those circumstances. And they certainly wouldn't know what the ethics board thinks they mean. An interesting point on this in particular, at one point in their reply brief, in their answering brief, the ethics board says in kind of an excuse, says we're not hearing the lawyers because we haven't found the lawyers. We've only found burials. We haven't found the lawyers, but the lawyers are in violation, which is of great concern to the lawyers. But they say we haven't found them. And why didn't they find the lawyers? They didn't find the lawyers because they said the law does not impose fines on people who don't understand the law. This is coming from the affidavit as well, isn't it? No, this is coming from their brief. It's an explanation of why lawyers weren't fined. We're bound by the record. Pardon? We're bound by the record. Yes. That's what they said. We don't find these people because they don't understand it. To me, those words have got nothing to do with the affidavit. Those words are a concession on the part of the county that this ordinance is vague because practicing lawyers don't understand what it means. They didn't say don't. They said can't understand, as I recall. Now, that pretty much sums up official action, except that I have another serious problem with official action. You have a few more minutes left. Thank you for reminding me. The parties that we're talking about here, the 30 people that were fined in the original action, the lawyers, they were participating in a quasi-judicial proceeding, an essential part of a court proceeding, ultimately a court proceeding. But it is a quasi-judicial proceeding. They are enforcing a constitutional right for a client. Can they or that client be forced to give up another constitutional right, specifically the right to make the contributions? The state's attorney, I think, makes the argument that there are, for instance, there's federal laws. Federal contractors can't donate to federal candidates. The difference here is it's maybe not quite as global. It only applies to a certain smaller group of people. But don't we have sort of enough case law out there that says it's okay to stop certain kinds of people from donating to political campaigns, such as foreign nationals? Well, it would have. Copy tax lawyers in the same group. Tell me why that isn't right. Well, what they're asking me is could they write such an ordinance? Or in my view, you're asked to decide whether this ordinance, understanding that distinction. I think not because of the name, but that would be a complicated question. But it's easy with contractors because a contractor is asking for specific conditions with the government, and they're agreeing to be bound. And plus the cases that we cite in the free speech argument, McCutcheon in particular pretty much explains that. You can narrow it down. In the time remaining, let me ask you one question about the home rule. Sure. Points that you make. The parties discuss a different law called putting the election code aside for a minute. There's another law called the State Employees and Officers Ethics Act, which says that local governments have to adopt an ordinance that regulates basically political activities on government property in a manner no less restrictive than what's in the state law. And you make the argument that the election code somehow preempts the field, which is why the county's home rule powers don't extend to enactment of this ordinance. But isn't there a valid argument that the State Employees, Officers, and Ethics Act, because it specifically directs local governments to regulate political campaign activities within their boundaries, does open the door to things like the Cook County Ethics Ordinance, regardless of what's in the election code. No, because they're not employees. And, well, I think they could impose conditions on employment, but you can't engage in... The State Act says that you can't stipulate petitions on government property, you can't wear campaign buttons, you can't do all sorts of those kinds of things. Solicit money, it all stemmed from the people in the Secretary of State's office using the phones to call up and sell tickets. Frankly, I think it's all different subject matter, the control of employees and government property and so forth. The essence of our home rule issue, Your Honor, is that the State has, I don't like to use the term occupied space, but in effect there isn't any specific presumption, we agree that here, there isn't a preemption, I'm sorry. But what we do have here is a state constitutional provision that says that elections are to be run by the state, they have to be uniform, etc., etc., language is in our briefs. The state here, in following this power, the state here has said $5,600 is sufficient to prevent quid pro quo corruption, which is the only basis the county can restrict, anybody can restrict speech. And secondly, they also said basically going up to that number, does that interfere with free speech? But can't the county make a local decision and say, well, in our view of 17 commissioners, that we think $5,600 is too high? That would be contrary to what the state has determined. You know, the real highlight of this is the provision growing the caps. Mr. Barrios ran against the self-funding candidate who put in over a million dollars of his own money. Because of that, under state law, there were no limits on contributions people could make. And the reason they put that limit in is for fairness. They said, the state by policy and statute has said, the only way you can conduct a fair election in this situation is to eliminate the caps. And what the county is saying is, we not only want to eliminate our cap, but we're making it even stricter. That is such a clash with basic state policy that it can't stand. Mr. Ford, let me ask you one more question. I'll ask you to close up so we can hear from the other side. It appears from the record that your case that we have before us is a straight chancery case, facial challenge on various grounds. But it appears that the Ethics Board has made specific decisions as to specific contributions and imposed fines, and that there's a separate administrative review case going on regarding those orders. Is that correct? Yes, Your Honor. And those cases are frozen? They're safe. They're safe for right now. Okay, thank you. Please conclude. I'll say whatever I have. We're about out of time. All right, thank you. Thank you, Your Honor. Mr. Castiglione. Your Honors, good afternoon. May it please the Court. Mr. Ford, I am Paul Castiglione. I'm here on behalf of the county. Justice DeLeon, I'm going to start with the home rule issue that you raised late in the argument, Mr. Ford, and I'll circle back to the void for vagueness in the First Amendment. Plaintiffs have argued throughout this that Article III, Section 4 really preempts this, that the Election Code preempts this matter, and that the caps in Section 285B are basically preempted by the Election Code. But the problem with that is the circuit court correctly found that Article III, Section 4 refers to the mechanics of voter registration, residency requirements, and other election and voting procedures. It really doesn't apply to what we have here, which is a county ordinance designed to prevent quid pro quo corruption. It's an anti-corruption device. The circuit court hears exactly what they said. Article III, Section 4 is concerned with the registration and mechanical procedures for holding elections, not every matter that bears on elections generally. Plaintiffs have argued that the circuit court was wrong to rely on the Supreme Court's decisions, Article III, Section 4 decisions in Totten and Beyer, because those cases did not involve a home rule's authority, rather a home rule's attempt to regulate matters already covered by the Election Code. The stumbling block with this argument we submit is that it is untenable post-Blanche Review burials, which we discussed in our brief at length. We feel that under Blanche Review burials, the county clearly had home rule authority to pass this type of anti-corruption device. Sections 2585B, 2585F, and 2602D are there to prevent public corruption, prevent the appearance of public corruption. Keeping in mind we must abide by the Illinois Supreme Court. Right. Well, Entry vs. Burials really deals with an interesting issue that was floating out there for a long time, which is whether the county board could extend its reach with respect to the assessor, the board of review, the county clerk, the recorder, the sheriff, all those other officers who always claim that they're completely independent and without any regulatory authority from the county board. That's really what I saw Blanche Review as being about. I agree with that. The argument they're making is that the election code preempts the field of campaign finance regulation. I don't think that's a proper reading of Article III, Section 4. I think that's contrary to Totten and Boyer. I forgot the case for a second. And I think Blanchard does cast a shadow over this case because in Blanchard, I think, for the first time, the Supreme Court recognized county government as a, it's mentioned in ordinances, it comes up more occasionally, but it never really was recognized as a matter that might be subject to, county government was never recognized, I don't think, before Blanchard, as something which could be regulated pursuant to the county's home rule powers. And clearly that's what Blanchard said because the argument that Mr. Burials advanced in Blanchard was basically this. This was about the application of the property tax code and whether or not, you know, who controls, who has authority to investigate possible corruption or possibly even just things done wrong within the assessor's office. And the argument for Mr. Burials was that he is regulated by the State Department of Revenue and his authority comes under the property tax code. What the Supreme Court said was that notwithstanding that the ordinance at issue in Blanchard was an anti-corruption ordinance and the county, that was within the county's government affairs. They had home rule power to investigate. So I think it's analogous here that the 285B is an anti-corruption statute. The concern is if, you know, if individuals seeking official action, and I realize that's really more part of the void for vagueness argument, we'll get to that in a moment, but individuals seeking official action from the assessor, or from any county official, at least the appearance of impropriety, if that impropriety itself was possible, someone could make unlimited amounts of contributions. So to address that problem, the county board passed an ordinance limiting contributions to $750 to people who seek official action and they can give up to $750 in a four-year cycle to any candidate for county office. So I think that, like the ordinance at issue in Blanchard, the ordinance here is one, like I say, the intent was anti-corruption. That comes within the county's home rule power. So I don't think there's preemption here. And I think, again, the main arguments plaintiffs are advancing, saying the criminal authority was lacking, may have been tenable before Blanchard, but are untenable post-Blanchard. Let me ask you to address sort of the touchy issue of the self-funding candidate who popped into the race. Because they claim that that problem by itself, you have a millionaire candidate who can spend unlimited amounts of money, at least it was all money, created some kind of inequality that raises a sufficient constitutional issue by itself to validate the ordinance. I think that's a matter ultimately for the state legislature. I mean, I think within the cap-busting provision, which was section 9-8.5 of the election code, clearly the legislature could put in preemption language to prevent this type of anti-corruption ordinance. But they haven't done so. And we cited cases in our booth. It's clear that recently, 2015, the Supreme Court has continued to say for preemption of a home rule entity, that preemption must be expressly stated in the statute. The statute on statute says much the same thing. So even if it leads to what might seem like an incongruous result, it's one that's within the legislature's power to stop. They normally look for specific language of preemption. Right. But the Supreme Court got around that in the StubHub case. They did, but at the same time in, I think the case we cited, I can't remember the name of it, Your Honor, was from 2015. I think that has to be, I think that's still out there as well. And statute is still out there. But I'll address the, it's really the Palm analysis from the Palm case. And it's really a two-part analysis. One, is this a matter of local or statewide concern, number one. And if it's local concern, has there been preemption? I think, again, going back to Blanchard, and I think that is sort of the, you know, I think it's, you know, in a legal sense, all roads lead to Rome. And Rome in this case is the Blanchard decision. Based on Blanchard, public corruption, at least in this sense, is a matter of local concern. Maybe arguably it wasn't pre-Blanchard. I don't think it's arguable now. So if you set that as a matter of, that as a matter of local concern under Blanchard, then you have to look, has there been preemption? And as I said about the cap busing provision or anything else in the election code, there's been no express preemption. Going back to the verdict for vagueness, I'd like to take issue with some of the arguments about the appropriate legal standards. First, as Justice Breyer, as you noted, this is a facial challenge. And as this Court recognized in Gadsby v. Brown, under a facial challenge, an enactment is facially invalid only if no set of circumstances exists under which it would be valid. So the plaintiff's burden is to say no matter what set of facts you come up with, this is invalid. That is the standard, and that's the standard for the two, the verdict for vagueness, due process, and First Amendment claims. But plaintiffs take issue with, we say for verdict for vagueness, the standard is from Wilson v. County of Cook, does the vagueness must permeate the entire statute. We'll point out that they disagree with that. But the cases they cite, Carlin, Seventh Circuit case, and Carlin v. Supreme Court case, relied on another Supreme Court case, Hoffman v. States, which the Illinois Supreme Court relied upon in Wilson. And here's what they said in Wilson. In order to succeed on a facial vagueness challenge as opposed to an as-applied challenge, the vagueness must permeate the text of such a law. So I think it's clear that's the standard. I have read Justice Gorsuch's concurring opinion in sessions. I don't think it changes a thing. I think what he basically said was that verdict for vagueness, that doctrine is rooted in the due process clause, and perhaps in separation of power. But I think he mainly focused on due process. We take no issue with that. We think we agree it's part of due process. And I think I'm just taking that one step farther. And as explained in a case that plaintiffs cite, Colander, verdict for vagueness challenge is really grounded in the principle of lack of notice. I want to point out that the amount of notice in this ordinance is substantial. You start with 2585B. It says, those who request official action from the county are barred from contributing more than $750 to any candidate for any county office. So that's number one. Number two, 2585F says, well, candidates, if you have received contributions in excess of this limit, you have 30 days from our notice. Notice of the ethics board to give it back. So that's more notice. And then three, 2602B imposes the board of ethics to impose a fine of $1,000 for knowing violations. That's yet more notice. So the idea that this ordinance is not giving any notice of what it's prohibiting and what the possible ramifications are, I think is just untenable. I think it clearly does give notice. I don't think it's vague in any way whatsoever. But beyond, I know a lot of the vagueness argument from plaintiffs rests on this whole official, what is official action. So I'd like to address that. As you pointed out, Justice Seward, official action is to not fall off from the skies. It's common in federal, state law. I did a Google search this morning of both the municipal code and the county's code and found at least five statutes where official action is used without definition.  Second, I would point out that it's a principle of statutory construction that ordinances or statutes should not be read in a way that renders them absurd. Here's what we've, in this facial challenge, the county only has to come up with an explanation of how the statute could be read, how official action could be read in a way that renders it constitutional. We've said that official action should be limited to requests for discretionary and not ministerial action. We think that makes sense because the whole idea is to prevent corruption. That makes sense, but it's only in the affidavit, which was never considered, right? It was only in the affidavit. And in the ordinance, which is the other main argument. In retrospect, the trial judge did not consider it, and we think we have no problem that he didn't consider it, in that I don't think he needed to. I don't think we needed to put in any evidence. He had a full record if it was. If he did consider it. Well, except that under the standard for facial challenges, we just have to offer an explanation that would render the statute constitutional. I'm not sure we needed to put in an affidavit. I think it was a belt and suspenders thing. We were being extra careful, but I don't think we needed to do it. And that was one of the points. Since it's a facial challenge, I think all we needed to do was posit a reading that makes sense and passes constitutional muster. But I would add, too, in terms of making sure that the ordinance makes sense, applying it to only discretionary actions does make sense, because the whole point is an anti-corruption statute. It makes no sense to say a request for a marriage alliance is official action because the official has to give that anyway, whether or not there's no discretion at all. So there's no risk of corruption on the part of the public official in question. Mr. Ford mentioned we did cite the dictionary definition of official actions that act done by an officer in his official capacity under culture, under color, rather, and by virtue of his office. We think that supports the reading that we're getting. But most importantly, defendant's reading of official action is consistent with the county board's exercise of its broad authority under its formative powers to enact tailored anti-corruption limits, a matter which cannot be contested post-branching with respect to county government. Finally, with respect to the First Amendment claims, Your Honors, plaintiff rests a great deal on McCutcheon. But McCutcheon not only does not support plaintiff's First Amendment claims. By the way, I would acknowledge that it's true, and McCutcheon does say that when the government restricts speech, it means the government has the burden of putting the constitutionality of its actions. So we acknowledge that. Now, McCutcheon also recognized that the government lifts this burden when they restrict clinical contributions as part of a statutory regime designed to prevent quote, unquote, corruption. And that, as the circuit court found, is why McCutcheon is distinguishable from this case. The statutory regime in McCutcheon did not do that. The county ordinance does. So McCutcheon does not support plaintiff's position, and, in fact, it shows why the county ordinance is consistent with the First Amendment or did not violate First Amendment principles, whereas the regime in McCutcheon did not. Section 585B addresses quid pro corruption, and that's the important. And as the circuit court found, that's the basis for upholding this, why the First Amendment challenge to 285B does not work. I'd also point out Buckley and Mixon cases we cited with restrictions that were tighter than this one. In Mixon, the court upheld the $275 campaign contribution limits on all donors to state candidates. And finally, I'd also point out in the First Amendment, say we cited a D.C. circuit case, Wagner, which shows that official action seekers are free to become members of any political association and assist personally in the association's efforts on behalf of candidates. So the ordinance is not an idea that's restricting all political activity. It's not really the case. And I should add one other thing about the going back to the void for vagueness, the definition of person. I think that's perfectly appropriate. That would include lawyers as well as their clients. Again, the purpose of the ordinance was to prevent corruption. And the idea that lawyers practicing before the assessor's office could just make an unlimited amount of contributions, that's exactly the type of problem that the county is trying to address. So I see no problem with the broad definition of person. I do not think it renders it void. If this Court has no further questions, we just ask that the order from the circuit court granting summary judgment to the county and denying it for the plaintiffs would be affirmed. Thank you, Counsel. Thank you, Your Honor. Mr. Ford? Thank you, Your Honor. The explanation that you just received from Mr. Castillo is so perfectly in line with the warnings of the Gorsuch opinion that I referred to. Mr. Castillo says we only go here to look for corruption. Obviously, we're not people who get a birth certificate or a marriage license. And there is no risk of corruption there. So we won't go there. But the statute doesn't say that. And what's so compelling about the Gorsuch opinion is he warns how agencies can make it up. They can decide who and how and where they're going to prosecute a statute if it's vague. He says they're only going after lawyers because that's where we feel the risk is. Isn't that something that's inherently a power of any prosecutorial agency to say, well, we're going to concentrate on gun crimes rather than shoplifting, for instance? The ethics board is saying we're going to go after lawyers who are donating for property tax reductions, who are also seeking property tax reductions, as opposed to contractors. But the ordinance doesn't say that. But they're making the argument that because it allows them that discretion to emphasize their resources toward property tax issues, that there's somehow a problem there. And maybe you can help me understand your argument with respect to that issue. Well, first of all, the ordinance doesn't say that. We say it's vague. One of the dangers of a vague statute is that prosecutors have said it's a matter of discretion. It's a matter of this thing is so vague that they say we can go anywhere with this statute. They not only direct it selectively, and that's another term, looking at vagueness. It's so selective that we cite in our brief a recent example where they charged a number of people for violations and then dismissed the charges as to some because they weren't onerous. That kind of selective prosecution is one of the dangers of a vague statute. Now, you look at the statute and you say, who does it cover? How does it cover? What is county action? Who is the county? They say the state's attorney. Is that a county officer? Who would know that reading the ordinance? If you read, they were reading this ordinance as they agreed, could not understand what it means. The ordinary person reading this ordinance could not understand what it is intended to control. All these things he's talking about are not there. And it's completely vague in every respect, every word. I've demonstrated persons seeking county action, official action by the county. Is a certain court judge a county official? Judge Taylor didn't know. I thought that the issue about Judge Lewis and the state's attorney was off the table. No, no, no. Is it still? No, no. It's another question of the vagueness. I mean, I would say on that point, I mean, the state's attorney is the principal attorney for the county, in addition to being the prosecutor for the state. So are you saying when it says any person, are you saying that an attorney reading that would scratch his head and say any person? Gee, I wonder if that applies to me. Well, look at it this way. Is that what you're saying? I'm saying this. Every practicing lawyer knows that in an ordinance like that, what you're talking about is the party. We have to read in connection with the party seeking county action. Now, who is it? So you would rather have them read any part of the action? That's basically what it says. But what if it is too broad? Well, Justice Harris, it's defined in the ordinance. The ordinance defines persons, and what it means is the client. The client is the one seeking county action, not the lawyer advocating his rights. So you have to read it in that context. If a lawyer looked at that and said, that person seeking the county action, that's got to be my client, but if he had any doubt about it, he would go to the definitions within the ordinance and see who is a person that is intended, just like a person in a contract, and he would see the definition, and the definition doesn't include lawyers or agents. Then why would it? A good share of the people seeking these adjustments aren't in fact lawyers, are they? The people seeking the adjustments are not lawyers. The clients are all represented by lawyers, tens of thousands. I lost the train of thought there. I'm at the same point. Well, come back to me. You've got a couple minutes left. Yeah, I think it was on this county part, who was the county, and that aspect wasn't abandoned by any means. We had an exchange with the trial court about, is it possible even that a judge is a county officer? I said, you are. Since we officialized it, I've reviewed my notes, and it does appear that that issue is preserved. Yeah, and he said, no, I'm not. Then later he said, you know, I think you might be right. I might be, and my answer then and today is, I don't know, and that's the problem. And the same thing with the state's attorney. So it isn't a point of we're trying to sweep the state's attorney into this. The point is that the term county officers in the state's attorney is listed in the ordinance. Whether the state's attorney is a state's officer or a county officer is unclear. It's vague. This whole five or six words here are fraught with vagueness from beginning to end, and the only way to solve it is to reverse the decision of the trial court, determine that the statute is unconstitutionally vague, and let them rewrite it the proper way. And then they can enforce it without trying to rewrite it themselves by deciding we'll read persons, we'll write in lawyers, we'll write in agents, we'll write in the ministerial. So I thank the court for more time than I was entitled to, and I appreciate your participation and urge you to reverse the decision of the trial court. Thank you, counsel, on both sides for your arguments. The matter will be taken under advisement, and the court will stand in recess.